FX Funding LLC v Fox RX Inc. (2024 NY Slip Op 06539)

FX Funding LLC v Fox RX Inc.

2024 NY Slip Op 06539

Decided on December 24, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 24, 2024

Before: Manzanet, J.P., Singh, Gesmer, Rodriguez, Michael, JJ. 3200 FX Funding LLC, Plaintiff-Appellant-Respondent, -against- Fox RX Inc. et al., Defendants, Dr. Reena Nandi et al., Defendants-Respondents-Appellants. Index No. 656779/16 Case No. 2024-02980 

Index No. 656779/16 Appeal No. 3200 Case No. 2024-02980 

[*1]FX Funding LLC, Appellant-Respondent,
v
Fox RX Inc. et al., Defendants, Dr. Reena Nandi et al., Respondents-Appellants.

Law Office of Sheldon H. Gopstein, New York (Sheldon H. Gopstein of counsel), for appellant-respondent.
Hiller, PC, New York (Michael S. Hiller of counsel), for respondents-appellants.

Order , Supreme Court, New York County (Nancy M. Bannon, J.), entered May 6, 2024, which denied plaintiff's motion for summary judgment to pierce the corporate veil of defendant Fox RX Inc. and hold defendants Dr. Reena Nandi and Dr. Dipak Nandi liable on the first through third causes of action and denied the Nandis' motion for summary judgment dismissing the claims against them, unanimously modified, on the law, to the extent of dismissing the fifth cause of action (unjust enrichment), and otherwise affirmed, without costs.
Plaintiff FX Funding LLC made substantial loans to defendant Fox RX Inc. According to the Nandis, Dr. Dipak Nandi is the CEO and Dr. Reena Nandi is the sole shareholder and President of Fox RX.
The court properly denied plaintiff's motion for summary judgment — its third such motion — which is barred by the rule against successive summary judgment motions (see e.g. Amill v Lawrence Ruben Co., Inc., 117 AD3d 433, 433-434 [1st Dept 2014]).
The court also properly denied the Nandis' cross-motion for summary judgment to dismiss the claims against them. "Generally, a plaintiff seeking to pierce the corporate veil must show that (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) . . . such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (Cortlandt St. Recovery Corp. v Bonderman, 31 NY3d 30, 47 [2018] [internal quotation marks omitted]).
The Nandis assert that there is insufficient evidence to prove they exercised "complete domination" of the corporation for purposes of piercing the corporate veil, as there was no improper intermingling or use of loan proceeds, and they were not required to strictly adhere to corporate formalities, since family-owned, closely held corporations such as Fox RX commonly dispense with such formalities. Moreover, although Reena was listed as an officer and a signatory on various documents, Dipak in fact solely controlled and handled the day-to-day operations of Fox RX. To that end, the Nandis contend that a stamp was used to add Reena's signature to checks on the Fox RX business account.
On the other hand, plaintiff argues that both Reena and Dipak exercised complete domination and control of Fox RX sufficient to pierce the corporate veil, as evidenced by, inter alia, their total disregard for corporate formalities, intermingling of corporate and personal funds, and use of the loan proceeds for personal matters. Additionally, documentary evidence proves Reena served a pivotal role in the wrongful diversion of loan proceeds, including but not limited to documents listing Reena as the sole shareholder, CEO and President of Fox RX. In her capacity as President, Reena signed three secured promissory notes, the security agreements with FX Funding, and three letters instructing three law firms to directly wire funds to FX Funding's attorneys. Further, she is a signatory on Fox RX's [*2]business account at JP Morgan Chase Bank and wrote checks on the account to which Dipak is not a signatory. It also appears that Reena personally benefited from the diversion of the loan proceeds which were used to pay family expenses, such as car payments, mortgage payments, gym memberships, country club fees, college tuition, home utility bills, nail and hair salons, pool cleaning services, and landscaping services.
In short, the claims raised establish an issue of fact as to whether both Dipak and Reena exercised complete domination and control of Fox RX sufficient to pierce the corporate veil, warranting denial of the Nandis' cross-motion to dismiss the claims against them.
Further, there are questions of fact as to whether "such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (id. at 47 [internal quotation marks omitted]).
We are unpersuaded by Dipak's contention that, in the context of a claim alleging diversion of loan proceeds by a debtor's principals, personal liability may only be imposed against shareholders, officers, and directors who have created, for unlawful purposes, a corporate structure which they used to incur corporate debt so that they could distribute the loan proceeds to themselves through fraudulent transfers. While that was the factual situation in Cortlandt, the Court of Appeals said, "courts will disregard the corporate form . . . whenever necessary to prevent fraud or to achieve equity" (id. at 47 [internal quotation marks omitted]; see also Tap Holdings, LLC v Orix Fin. Corp., 109 AD3d 167, 175 [1st Dept 2013]).
Dipak next points out that the security agreement between plaintiff and Fox RX contains a merger/integration clause; hence, plaintiff may not rely on the fact that, before the documents were signed, Dipak allegedly told it that the loan proceeds would be used for the qui tam cases brought by Fox RX (see Rong Rong Jiang v Tan, 11 AD3d 373 [1st Dept 2004]). While true, Dipak acknowledged at his deposition that he was looking for litigation funding.
Plaintiff's managing member submitted an affidavit saying that Dipak told him in early 2016 that he had used some of the loan proceeds to service mortgages on his houses and to pay tax bills. Dipak's denial of this creates a question of fact which will have to be resolved by the trier of fact (see St. Marks Assets, Inc. v Sohayegh, 167 AD3d 458 [1st Dept 2018]).
Citing Do Gooder Prods., Inc. v American Jewish Theatre, Inc. (66 AD3d 527 [1st Dept 2009]), Dipak contends that even if he had used loan proceeds for personal expenses, that would not warrant piercing Fox RX's corporate veil. However, Do Gooder is distinguishable. The dispute in that case arose from a license agreement (essentially, a short-term lease) dated August 14, 1998 between the plaintiff, as tenant, and the corporate defendant, as landlord (see Do Gooder Prods., Inc. v American Jewish Theatre, Inc., 2008 NY Slip Op 31281[U], *4 [Sup Ct[*3], NY County], affd 66 AD3d 527 [1st Dept 2009]). To pierce the corporate defendant's veil, plaintiff presented evidence that, in 1997, the individual defendant had drawn two checks on the corporate defendant's account for personal use (id. at *5). By contrast, the instant case involves loans from plaintiff to Fox RX and funds apparently being used for the Nandis' personal use after the date of the loan.
Finally, the court should have dismissed the unjust enrichment claim because plaintiff failed to oppose this branch of the Nandis' motion (see Josephson LLC v Column Fin., Inc., 94 AD3d 479, 480 [1st Dept 2012]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 24, 2024